*-- FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER --*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **PENOVIA LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ASUS COMPUTER INTERNATIONAL,**<br><br>Defendant. | **Civil Action No. 2:13-CV-771**<br><br>**JURY TRIAL DEMANDED** |

## ASUS COMPUTER INTERNATIONAL'S
## MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404

Pursuant to 28 U.S.C. § 1404, Asus Computer International ("ACI") moves to transfer this action from the Eastern District of Texas ("EDTx") to the Northern District of California ("NDCa"). As explained below, the NDCa is clearly the most convenient forum for this matter.

In patent infringement actions, such as this one, courts have repeatedly held that the bulk of relevant evidence is usually with the accused infringers. The accused infringer in this case, and all of its relevant operations, reside in the NDCa. ACI's headquarters and almost all of its employees, resources and documents are in the NDCa. Similarly, key prior art inventors and related companies are in the NDCa. Finally, ACI understands that at least one additional company defending against identical patent claims is also moving to transfer its case to the NDCa because of their California-based operations.

Penovia is a non-practicing entity. It incorporated in Texas and almost immediately began filing lawsuits on an admittedly expired patent. These tenuous litigation-inspired ties, alone, cannot defeat the overwhelming nexus between Penovia's claims and the NDCa. Penovia could—and should—have brought this case in the NDCa. ACI therefore respectfully requests that the Court transfer this case to the NDCa.

I.  **FACTUAL BACKGROUND**

   A.  **Case History**

Penovia filed this action against ACI on September 27, 2013 claiming direct infringement of U.S. Patent No. 5,822,221 (the "'221 Patent"). *See* Dkt. No. 1 (hereinafter "Compl."). The '221 Patent expired on October 13, 2010. *Id*. at ¶12.

The '221 Patent generally relates to techniques for monitoring office machines for maintenance issues. Penovia alleges that ACI infringes "by making, using, importing, selling and/or offering for sale office machine monitoring devices, including without limitation wireless routers and/or wireless gateways utilizing a device for monitoring certain machine statuses (e.g., indication of data transmission into or out from the wireless router or wireless gateway) wirelessly." *Id*. at ¶13. Specifically, Penovia accuses ACI's wireless gateway products of infringement (the "Accused Products"). *Id*.

This matter was consolidated for pretrial purposes with several other infringement suits filed by Penovia. (Docket No. 15). ACI understands that at this point all of the consolidated matters have settled or at least have reached agreement in principle. However, there remain additional related actions filed by Penovia that have not been consolidated with this one.

   B.  **ACI is a California company with very little connection to Texas.**

ACI is a distributor of computer products and systems, with a corporate headquarters and principal place of business in Fremont, CA. Declaration of Godwin Yan at ¶¶3-4. ACI has approximately 315 employees in California, where the vast majority of its employees are located. *Id*. at ¶5. Defendant does not have an office in Texas or any employees relevant to this case in Texas. Yan Decl. at ¶12.

### C. The documents related to this matter are located in the NDCa or in Asia

All of ACI's documents and information regarding sales of the Accused Products reside in its Fremont, CA headquarters. Yan Decl. at ¶9. Any other relevant documents related to the Accused Products are likely to be held by third parties in either Taiwan ROC or China, with no relevant documentation in Texas. *Id.* at ¶10-11.

### D. The majority of the witnesses and documents relevant to key prior art are in or near the NDCa.

Much of the prior art that ACI relies upon for their invalidity defense involves inventors and documents residing in or near NDCa. For example, Patent Application No. WO1997013208A1, lists an inventor living in California. *See* Exhibit A (WO1997013208A1). Another potential prior art reference lists Hewlett-Packard, headquartered in Palo Alto, CA, and an inventor that lives in NDCA. *See* Exhibit B (EP 0754940 A2). Another key prior art reference lists Cisco Systems, headquartered in San Jose, CA, and an inventor living in California. *See* Exhibit C (WO 1995029544 A1).

ACI has not, thus far, identified any relevant prior art witnesses that reside within the Eastern District of Texas.

### E. Penovia is a recently created patent holding company with no apparent operations, and no compelling ties to the EDTx.

Penovia was created as a Texas limited liability corporation on December 12, 2012. *See* Exhibit D. Penovia appears to have been created solely as a patent holding company designed to sue companies for alleged patent infringement. Penovia is not in the business of developing and selling products. Penovia never attempted to contact ACI prior to filing the present action.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been

brought." 28 U.S.C. § 1404(a). The moving party has the burden of showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *See In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Courts have broad discretion to transfer under § 1404(a) "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

A threshold issue under Section 1404 is whether the case could have been brought in the proposed transferee district. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district, considering several "private" and "public" interest factors, none of which are given dispositive weight. *Id*. While not a specifically enumerated factor, judicial economy is considered in the analysis. *See, e.g.*, *In re Vistaprint*, 628 F.3d 1342, 1346-47 (Fed. Cir. 2010).

Finally, the location of the plaintiff's business and its choice of forum may be relevant to some factors. But, the location of an "ephemeral" entity is not given any weight. *See Novelpoint Learning LLC v. Leapfrog Enters.*, 2010 WL 5068146, at *4 (Dec. 6 2010) (citing *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2009)); *see also In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011).

### III. THE CASE COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA.

Under Section 1404(a), a case "might have been brought" in the transferee court if that court is a proper venue, has subject matter jurisdiction over the claims, and personal jurisdiction over the defendant. *See Volkswagen I*, 371 F.3d at 203. Here, subject matter jurisdiction is

4

based on the patent subject matter and is equally valid in NDCa. 28 U.S.C. §§1331 and 1338(a). ACI's headquarters, and its relevant employees are within NDCa (Yan Decl. at ¶4) making both personal jurisdiction and venue proper.[1]

## IV. THE PRIVATE FACTORS – IN PARTICULAR THE LOCATION OF PARTY AND THIRD PARTY WITNESSES AND DOCUMENTS – STRONGLY FAVOR TRANSFER.

Private interest factors to be considered in determining a transfer of venue include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen I*, 371 F.3d at 203. As explained below, transferring this case to the NDCa would be more convenient to both the parties and witnesses.

### A. The relative ease of access to sources of proof strongly favors transfer.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The Federal Circuit has clarified that "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* Here, virtually every piece of documentary evidence related to the Accused Products is located within the NDCa or in Asia—while no relevant evidence related to the Accused Products resides in the EDTx.

Further, many relevant prior art documents identified thus far are likely to reside with NDCa inventors and companies. In short, any relevant documents or evidence within the United

---

[1] *See* 28 U.S.C. §§ 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides"); 1391(d) (where state has multiple districts, venue proper for corporation in any district in which personal jurisdiction would have been proper if district was its own state).

States related to any of the Accused Products and relevant prior art is very likely to be located within the NDCa.

Finally, courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316-17. Here, the distance the parties must transport documents, from the NDCa to the EDTx, is over 1,700 miles. Similarly, the difference in distance from, for example, Taipei, Taiwan to the NDCa, versus Taipei to the EDTx is over 1,300 miles. Requiring the parties to collect evidence from across most of the continental U.S. is severely burdensome.

Because the bulk of relevant documentary evidence resides in NDCa—this factor strongly favors transfer.

### B. Availability of compulsory process strongly favors transfer.

This factor examines the availability of a district court's subpoena power to secure the attendance of non-party witnesses. *See Volkswagen II*, 545 F.3d at 316. This factor favors transfer when more non-party witnesses reside within the proposed transferee forum than the plaintiff's selected venue. *See In re Hoffman-La Roche*, 587 F.3d 1333, 1336-38 (Fed. Cir. 2009).

A substantial number of key non-party witnesses are located in NDCa, and therefore reside outside this Court's subpoena jurisdiction for trial. *See, Volkswagen II*, 545 F.3d at 316. In particular, many witnesses with information about key prior art are located in the Northern District of California. Defendant is not aware of any non-party witnesses residing in EDTx or within this Court's absolute subpoena power save a single inventor of the '221 Patent. The non-party prior art inventors and applicants located in the Northern District of California include:

- Hossein J. Arjomand, who lives in the San Francisco Bay Area;

- Cisco Systems, Inc., which is headquartered in the NDCa;

- Hewlett-Packard Company, which is headquartered in Palo Alto, CA; and

- Bruce Cole, who lives in the San Francisco Bay Area

The overwhelming bulk of the relevant non-party witnesses related to the Accused Products and relevant prior art—what will be of primary issue in this case—are all located in NDCa and California. This Court has recently noted that the new Rule 45 allows a district court to compel deposition testimony of witnesses previously beyond its subpoena power. *Virtualagility, Inc. v. Salesforce.com*, Inc., 2014 U.S. Dist. LEXIS 12015, at \*14-19 (E.D. Tex. Jan. 31, 2014). However, as the *Virtualagility* opinion notes, this court would not have the power to subpoena NDCa witnesses for trial, while the NDCa court would. *Id.* While the preference for live testimony at trial may be weakened due to the availability of a video deposition, it is still the preference. *Battle v. Memorial Hosp.*, 228 F.3d 544, 554 (5th Cir. 2000). Live testimony of third-party witnesses remains the best way to proceed at trial, which is why the Federal Rules allow deposition testimony only under certain circumstances. Fed. R. Civ. Proc. 32(a)(4). ACI would therefore be prejudiced if the possibility of the best type of testimony (live testimony) was taken away. Because the majority of third party witnesses are likely to be located in the Northern District of California, this factor also favors transfer.

### C. The cost of attendance for the parties and witnesses strongly favors transfer.

The convenience of the witnesses is "probably the single most important factor in a transfer analysis." *See Genentech*, 556 F.3d at 1343.

Any potential witness related to the Accused Products, called by any party, will likely be located in the NDCa or in Asia. ACI's U.S. employees with relevant information are all based within the NDCa.

*-- FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER --*

The majority of all probable non-party witnesses are also located in the NDCa. If this case proceeds in EDTx, nearly every key witness—whether called by ACI or Penovia—will be required to travel more than 1,700 miles to attend trial. Transfer to NDCa would *significantly* reduce costs for the witnesses. Accordingly, this factor strongly favors transfer.

### D.  Practical problems – including judicial economy – favor transfer.

This action and related cases within this District are at the very earliest stages of litigation. As such, this Court has not devoted significant time or effort to resolving Penovia's claims or developing expertise on the Defendant's technology and the relevant legal issues.

Because of the strong nexus between the underlying facts of the consolidated cases and the NDCa, ACI anticipates that other defendants currently involved in pending suits related to the '221 Patent will seek transfer. Transferring this action now paves the way for related cases to be transferred to the appropriate forum with the strongest nexus to the relevant evidence and witnesses—NDCa. Transferring to the correct forum now, before this Court has expended significant resources, will thus greatly increase judicial economy.

### E.  Penovia's contacts with the Eastern District of Texas are "ephemeral" and should be given little weight.

Considering that Penovia's ties to Texas are tenuous at best, this court does not have any significant interest in settling plaintiff's dispute. Penovia has only existed since December 12, 2012. Penovia is a patent holding company with no apparent operations. Simply incorporating in Texas for the purpose of bringing infringement lawsuits does not create sufficient ties to EDTx to defeat a § 1404(a) transfer. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

When, as here, "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal

consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). As explained above, virtually all of the relevant facts—such as the design, marketing, and development of the Accused Products—occurred in or near NDCa, not EDTx.

## V. THE PUBLIC FACTORS – IN PARTICULAR THE LOCAL INTEREST OF THE NDCA – STRONGLY FAVOR TRANSFER.

Public interest factors to be considered in a possible transfer are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *Volkswagen I*, 371 F.3d at 203.

### A. Local interests strongly favor transfer

The transfer venue's local interest is strong and favors transfer in situations, such as this, where the cause of action calls into question the work and reputation of individuals residing in the district. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("[The transfer venue's] local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.").

Here, ACI's headquarters, operations, and nearly all of its employees are in California. In sharp contrast, almost no witnesses reside in EDTx, and very few known documents or other evidence is located in EDTx. NDCa has a strong interest in settling this dispute—particularly considering that the only reputations on the line are those of NDCa or California residents.

### B. The remaining public interest factors are neutral.

Both districts are equally familiar with patent law and there are no conflict of law issues. This Court has recently assessed the court congestion factor in regards to transferring to the N.D.

9

Cal. In that case, the Court determined that assessing court congestion and time to trial was very speculative and therefore this factor was neutral. See *PersonalWeb Technologies, LLC v. NEC Corp. of America, Inc.*, 2013 U.S. Dist. LEXIS 46296, at *36 (determining that this factor was neutral "[b]ecause of the speculative nature of [the court congestion] statistics"). As in PersonalWeb, this factor does not weigh for or against transfer in this case. Therefore, these factors are neutral.

## VI. CONCLUSION

Under the Section 1404 analysis, each factor favors transfer or is neutral. Therefore, this Court should promptly grant Defendant's Motion.

Dated: February 21, 2014                    Respectfully submitted,

*/s/ E. Glenn Thames, Jr.*
Alfredo A. Bismonte
abismonte@beckllp.com
*Lead Counsel*
Jeremy M. Duggan
jduggan@beckllp.com
BECK, BISMONTE & FINLEY, LLP
150 Almaden Boulevard, 10th Floor
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790

E. Glenn Thames, Jr.
Texas State Bar No. 00785097
glennthames@potterminton.com
J. Matt Rowan
Texas State Bar No. 24033137
mattrowan@potterminton.com
POTTER MINTON
A PROFESSIONAL CORPORATION
110 N. College Avenue, Suite 500
Tyler, TX 75702
(903) 597-8311 Telephone
(903) 593-0846 Telecopier

***Counsel for ASUS Computer International***

*-- FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER --*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on February 21, 2014, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

                                                          */s/ E. Glenn Thames, Jr.*
                                                          E. Glenn Thames, Jr.

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for ASUS Computer International has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on February 19, 2014 via telephone conference with the following participants:

    Glenn Thames for ASUS Computer International
    Craig Tadlock for Penovia LLC

No agreement could be reached because the parties could not agree to the relief requested. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

                                                          */s/ E. Glenn Thames, Jr.*
                                                          E. Glenn Thames, Jr.

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

                                                          */s/ E. Glenn Thames, Jr.*
                                                          E. Glenn Thames, Jr.